| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY **Caption in Compliance with D.N.J. LBR 9004-1** **McMANIMON, SCOTLAND & BAUMANN, LLC** 75 Livingston Avenue, Second Floor Roseland, New Jersey 07068 (973) 622-1800 Richard D. Trenk, Esq. (rtrenk@msbnj.com) Robert S. Roglieri, Esq. (rroglieri@msbnj.com) *Counsel for Log Storm Security, Inc. d/b/a BlackStratus, Chapter 11 Debtor and Debtor-in-Possession* | |
|---|---|

**Order Filed on September 1, 2020
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| In re: LOG STORM SECURITY, INC. d/b/a BLACKSTRATUS, Debtor. | Chapter 11 Case No. 20-12043 (MBK) Confirmation Hearing Date and Time: July 21, 2020 at 12:00 p.m. |
|---|---|

## ORDER CONFIRMING FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF LOG STORM SECURITY, INC. D/B/A BLACKSTRATUS

The relief set forth on the following pages, numbered two (2) through sixteen (16), is hereby **ORDERED**.

**DATED: September 1, 2020**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

(Page 2)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

Log Storm Security, Inc. d/b/a BlackStratus, Chapter 11 debtor and debtor-in-possession (the "Debtor"), by and through its attorneys, McManimon, Scotland & Bauman, LLC, upon the filing of a *First Amended Plan of Reorganization* [ECF 96] (the "Plan") at or in connection with the hearing on confirmation thereof (the "Confirmation Hearing") or pursuant to the terms of this order confirming the Plan (the "Confirmation Order"); and upon the *First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Chapter 11 Plan Proposed by the Debtor-in-Possession* [ECF 94]  (the "Disclosure Statement"); and upon the record of the hearing before the Bankruptcy Court, whereupon the Bankruptcy Court approved the Disclosure Statement and subsequently entered the *Order Approving Disclosure Statement, and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof*  on May 21, 2020 (the "Disclosure Statement Order") [ECF 100]; and the Bankruptcy Court, through the Disclosure Statement Order, having, *inter alia*, (i) authorized the Debtor to solicit acceptances or rejections of the Plan, as modified; (ii) set the deadline for objections to the Plan and voting thereon; and (iii) scheduled the Confirmation Hearing, as adjourned, to commence on July 21, 2020, at 12:00 p.m.; and the Confirmation Hearing having been conducted on July 21, 2020; and it appearing that due notice of the Confirmation Hearing has been given to holders of Claims against the Debtor and all other parties-in-interest in accordance with the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules; and a Certification of Service having been filed by the Debtor attesting to the mailing to the parties identified therein of the Plan, Disclosure Statement, and the Ballot, in accordance with the Disclosure Statement Order [ECF 104]; and upon the filing of a *First Amended*

(Page 3)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

*Certification of Ballots* dated July 17, 2020 [ECF 147] (the "Certificate of Ballots"); and objections having been filed to the plan by Boston Light Advisors, LLC and Caisson Breakwater Global Opportunity Fund, LP [ECF 122], the United States Trustee [ECF 123], BSIG, LLC [ECF 124, 127], Hubbard Capital LLC [ECF 125]; and upon the *Declaration of Dale Cline in Support of Confirmation of the Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated July 17, 2020 [ECF 142] (the "Cline Declaration"); and any objections having been withdrawn or overruled; and the Bankruptcy Court having reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Certificate of Ballots, the Certification of Service, the Cline Declaration, the testimony provided at the Confirmation Hearing, and the arguments of counsel made at the Confirmation Hearing; and upon the entire record of the Debtor's Chapter 11 Case, including all exhibits introduced into evidence at the Confirmation Hearing; and the Bankruptcy Court having taken judicial notice of the papers and pleadings on file in the Chapter 11 Case; and after due deliberation;

     **IT IS HEREBY FOUND, THAT**:

     A.    The Plan attached hereto as **Exhibit A**, as modified by this Confirmation Order, complies with all applicable provisions of the Bankruptcy Code.

     B.    The Plan has been proposed in good faith and not by any means forbidden by law.

     C.    The Debtor has disclosed to the Court any payments made or promised for services or for costs and expenses in connection with this case or the Plan, and such payments have been approved by, or are subject to the approval of, the Court as reasonable.

(Page 4)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

D.      No government regulatory commission has jurisdiction over any rates charged by the Debtor.

E.      Class 1, Class 2, Class 3, Class 4, Class 5, and Class 6 are impaired under the Plan. As reflected in the filed Certification of Ballots, Class 2 and Class 5 creditors, which are impaired classes of Claims, have voted to accept the Plan.  Class 1, Class 3, and Class 4 did not vote on the Plan.  On the record at the Confirmation Hearing, counsel for Boston Light Advisors, LLC and Caisson Breakwater Global Opportunity Fund LP indicated that each of the creditors changed its ballot to accept the Plan.  Based on that representation, Class 6, which is an impaired class of Claims, has voted to accept the Plan.

F.      The Plan is feasible.  The Debtor will be able and has sufficiently demonstrated its ability to meet its financial obligations under the Plan.  Confirmation and consummation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtor.

G.      All quarterly fees due under 28 U.S.C. § 1930 have been paid or will be paid in full on the Effective Date of the Plan.

H.      The Debtor has no retiree benefits as that term is defined in section 1114 of the Bankruptcy Code.

I.      Bankruptcy Code sections 1129(a)(14) and 1129(a)(15) are not applicable to this case.

J.      To the extent applicable, all transfers of property under the Plan will be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of

(Page 5)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

K.      The Plan meets all of the applicable requirements of sections 1129(a) and (b) of the Bankruptcy Code.

L.      The classification of claims and interests under the Plan is consistent with section 1122 of the Bankruptcy Code.

M.      The Plan specifies the classes of claims and interests impaired under the Plan and specifies the treatment of claims or interests in such classes.

N.      The Plan provides the same treatment for each claim or interest of a particular class.

O.      The Plan provides adequate means for its execution and implementation.

P.      The procedures by which the Ballots were distributed and tabulated were fair, properly conducted, and complied with the prior Orders of this Court.

Q.      The service of notice of the Confirmation Hearing and the solicitation of acceptances and rejections of the Plan were appropriate and satisfactory, and were in compliance with the provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

Based upon the above findings of fact; and good and sufficient cause appearing therefor,

**IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Plan [ECF 96] filed by the Debtor and annexed hereto as **<u>Exhibit A</u>**, and as amended and modified herein, be and hereby is confirmed in accordance with, among other sections, the applicable provisions of sections 1129(a) and 1129(b) *provided*, *however*, to the

(Page 6)

| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
|---|---|
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

extent there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  The terms of the Plan are an integral part of this Confirmation Order and hereby are incorporated herein by reference and "So Ordered" in their entirety.

2.      Notwithstanding anything to the contrary in the Plan, the Plan is hereby modified to incorporate the following: (i) Castle Shield Holdings, LLC's ("Castle Shield") initial bid dated June 15, 2020 (**Exhibit B**); (ii) Castle Shield's supplemental bid dated June 24, 2020 (**Exhibit C**); and (iii) Castle Shield's second supplemental bid dated July 15, 2020 (**Exhibit D**) (collectively, the "CSH Plan Terms").  To the extent any provision of the Plan is inconsistent with the terms of the CSH Plan Terms, the CSH Plan terms and this Order shall govern.

3.      Castle Shield purchased and is entitled to all assets of the Debtor, including servers and any administrative rights/passwords thereto (collectively, the "Assets"), which are property of the bankruptcy estate.  To the extent any third party holds any of the Debtor's Assets, including any rights thereto, those parties are hereby directed and compelled to turnover those Assets to the Debtor and Castle Shield within seven (7) business days of the entry of this Order, including but not limited to all administrator user passwords.   The Court shall specifically reserve jurisdiction to enforce the turnover of Debtor's Assets to the Debtor, including awarding sanctions for violating the terms of this Order, the bankruptcy stay and the requirement to turnover property of the estate to the Debtor and Castle Shield, as allowed under 11 U.S.C. §§ 362(k), 105(a) and 542(a)  This Order expressly requires any employee or third-party with any administrator user passwords to

(Page 7)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

turn over the administrator user passwords to the Debtor and Castle Shield within seven (7) business days of the entry of this Order.   The Debtor provided Castle Shield with a list of any third parties, including their respective contact, who, to the best of the Debtor's knowledge, are in possession of any Assets, including any administrator user credentials for the Debtor's servers.

4.     Article II.F.1.a is deleted and replaced with the following language:

On the Effective Date, the Debtor shall transfer to Castle Shield Holdings, LLC ("Castle Shield"), free and clear of all liens, claims, encumbrances, and other interests, subject to the terms of this Plan, all Assets of Debtor, as identified on **Exhibit E,** attached hereto, including:

(1) The equipment, machinery, servers and hardware of the Debtor used in connection with the Intellectual Property Assets, inclusive of all content from US based development servers (last housed in Piscataway, New Jersey) and Indian development servers) (the "Fixed Assets");

(2) All trademarks, service marks, copyrights, patents, software, programs and code of Debtor (the "Intellectual Property Assets");

(3) All contracts (including designation rights for assumption and assignment and/or rejection of all executory contracts) (the "Contracts");

(4) all licenses held by Debtor, including, but not limited to, licenses related software and other intellectual property, hardware, and equipment identified on Exhibit "E"; and

(5) all data and records related to the operations of Debtor, including client and customer lists and records, referral sources, research and development reports and records, production reports and records, service and warranty records, equipment logs, operating guides and manuals, financial and accounting records, creative materials, advertising materials, promotional materials, studies, reports, correspondence and other similar documents and records.

(Page 8)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

5.      The Debtor be and hereby is authorized and directed to sell, assume and assign its interest in the Assets in accordance with the CSH Plan Terms to Castle Shield free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. §§ 363(b), (f) and (m) and 365(a), (d), (f), (k) and (m), with any valid liens, claims, interests and encumbrances to attach to the proceeds of the sale.  Castle Shield is assured all of the protections afforded under 11 U.S.C. § 363(m) as a good faith purchaser.

6.      The Debtor warrants and represents that it owns the Assets.

7.      The Debtor warrants and represents that it has not removed or deleted any files from Debtor's servers since January 1, 2020 (except in the ordinary course of business) and to the best of its knowledge and belief no third party has removed or deleted any files from Debtor's servers since January 1, 2020 (except in the ordinary course of business).

8.      The Debtor warrants and represents that the Assets constitutes all of the intellectual property necessary for the operation of the business of the Debtor as now being conducted presently and as was necessary to be conducted during the period of January 1, 2020 through the petition filing.  There are no outstanding licenses or consents granting third parties any ownership rights to the Assets and the Debtor has not transferred any ownership of any Intellectual Property or other Assets of Debtor since pre-petition (since January 1, 2020) or post-petition.

9.      Debtor has received no notice of any adversely held patent, invention, trademark, copyright, service mark or trade name, or trade secret of any third-party, or any claims of any other third-party relating to any of the Intellectual Property Assets owned by Debtor and material to the

(Page 9)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

business of Debtor as now being conducted.  To the knowledge of Debtor, there is no presently known threatened infringement of any such Intellectual Property Assets.

10.     Pursuant to Bankruptcy Code sections 363(b) and 365(a), the Debtor is hereby authorized and directed to sell and transfer its interest in the Assets pursuant to and in accordance with the terms and conditions of the CSH Plan Terms and to take all other actions as are necessary to effectuate all of the terms thereof and to consummate the transactions contemplated therein, including, without limitation, such actions as are necessary to execute and deliver all documents and Assets, including without limitation, intellectual property referenced in and/or contemplated in connection with the sale without any further authorization of the Court.

11.     The sale of the Assets shall not subject Castle Shield to any liability by reason of such transfers and assignments under the laws of the United States, any state, territory or possession thereof or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of successor or transferee liability, and all creditors and parties-in-interest are prohibited from asserting such claims against Castle Shield.

12.     Castle Shield shall not be deemed to: (a) be a successor (or other such similarly situated party), or otherwise be deemed a successor, to the Debtor, including a "successor employer" for the purposes of the Internal Revenue Code of 1986, the Employee Retirement Income Security Act of 1974, or other applicable laws; (b) have any responsibility or liability for any  obligations of Debtor, or any  affiliate of Debtor, based on any theory of successor or similar

(Page 10)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

theories of liability; (c) have, de facto or otherwise, merged with or into the Debtor; (d) be an alter ego or a mere continuation or substantial continuation of the Debtor, including within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to Debtor's liability under such law, rule or regulation or doctrine; or (e) be holding itself out to the public as a continuation of the Debtor or its estate.

13.     The sale and/or transfer of the Assets is in furtherance of a plan of reorganization or liquidation in the Bankruptcy Cases and, as a result, the sale and/or transfer of the Assets are exempt from any state or local realty transfer tax or similar tax pursuant to 11 U.S.C. § 1146(a).

14.     The sale to Castle Shield approved by this Order is not subject to avoidance or the imposition of costs and damages pursuant to Bankruptcy Code section 363(n).

15.     Article II.F.1.b is deleted from the Plan.

16.     Article II.F.1.c is deleted from the Plan.

17.     Article II.F.1.d is deleted from the Plan.

18.     Article II.F.2 is deleted and replaced with the following language:

The funds necessary for funding the Plan will be derived from funds on hand on the Effective Date and from future royalties which shall be derived from CSH Plan Terms.

These funds shall be deposited with the Disbursing Agent (the "Royalty Fund") within forty-five days following the end of the each quarter. The Disbursing Agent shall distribute funds from the Royalty Fund in conformance with the priority scheme in section 507 followed by distributions to Class 1 ("First Distribution") in

(Page 11)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

conformance with this Plan. Upon satisfaction of the obligations under the Plan to Class 1, the Disbursing Agent shall make distributions from the Royalty Fund to Class 2 ("Second Distribution") in conformance with the Plan. Finally, upon satisfaction of the obligations under the Plan to Class 2, the Disbursing Agent shall make a distribution from the Royalty Fund to Class 6 ("Third Distribution") in conformance with the Plan.

Distributions made under the Plan shall be made no later than forty-five (45) days following a deposit of funds into the Royalty Fund.

19.     Article II.F.3 is deleted and replaced with the following language:

The Disbursing Agent shall be Rock Creek Advisors, LLC and act as the disbursing agent for the purpose of making all distributions provided for under the Plan, except for the distributions provided for in paragraph 18 of the Confirmation Order. The Disbursing Agent shall serve without bond and shall receive 1% of all distributions for distribution services rendered and expenses incurred pursuant to the Plan.

20.     Article III.A is deleted and replaced with the following language:

Within five (5) days of entry of this Order, the Debtor shall provide Castle Shield with a list of executory contracts and copies thereof to the extent any written documents exist. Within thirty (30) days of the entry of this Order, Castle Shield shall file a motion pursuant to 11 U.S.C. 365 with regard to which executory contracts shall be assumed and which contracts shall be rejected, with the exception of the License Agreement with CyberShark, Inc. (as further defined herein) which is being assumed and assigned as provided for herein in Paragraph 22.

Upon entry of this Order, the following executory contracts will be rejected:

• Assignment and Assumption Agreement between Debtor, Castle Shield Holdings, LLC and Kudelski Security, Inc., dated October 9, 2019

(Page 12)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

• Software License and Support Agreement between Debtor and Castle Shield Holdings, LLC, dated September 23, 2019

This Order shall constitute an order approving such rejection as of the Effective Date. A copy of this order shall be served upon Kudelski and Kudelski shall have 30 days to file a rejection claim. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

21.    Article IV.A is deleted from the Plan.

22.    Article IV.B is deleted and replaced with the following language:

The Claims, as defined in the CSH Plan Terms, shall be vested with Castle Shield, which may enforce any and all rights, demands and Causes of Action of any kind or nature whatsoever relating to the Claims held by, through or on behalf of the Debtor and/or its Estate against any other entity, arising before the Effective Date that has not been fully resolved or disposed of prior to the Effective Date whether or not such Claims are specifically identified in the Disclosure Statement accompanying this Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

23.    Notwithstanding anything to the contrary in the Plan, the Plan is hereby modified to incorporate the following terms:

a.    The total distributions to Class 1 shall not exceed $4.5 million. That is, the Allowed Class 1 Claim will not accrue interest or other amounts that will result in Class 1 receiving distributions from the Royalty Fund in excess of $4.5 million.

b.    BSIG, LLC's claim is hereby Allowed as a Class 2 Secured Claim in the amount of $1,804,656.54. [Claim Nos. 24, 25]. By entry of this Order, the Clerk of the Court is authorized and directed to permanently modify BSIG, LLC's secured claim [ECF 24] and to expunge BSIG, LLC's unsecured claim [Claim No. 25] on the claims register. BSIG, LLC shall not seek to further amend or assert any additional proofs of claim in this matter.

(Page 13)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

24.    The Initial Deposit of $100,000 to be paid by Castle Shield under the CSH Plan Terms plus the Carveout (as that term is defined in the Plan) of an additional $100,000 shall be paid by Castle Shield to the attorney trust account of McManimon, Scotland & Baumann, LLC for disbursement to administrative professional claimants, including McManimon, Scotland & Baumann, LLC, Rock Creek Advisors, LLC and Henry J. O'Brien, PA, EA.  Rock Creek Advisors, LLC shall not be entitled to the Success Fee set forth in their Retainer Agreement [ECF 73-1] unless and until Castle Shield provides more than $6,500,000 in payments under the Plan.  No funds shall be disbursed to any professional until such fees are approved by the Court.

25.    The priority unsecured claims of the former employees set forth in Article II.D.2 of the Plan shall be *pari passu* with Class 1 of the Plan.

26.    Within ten (10) days, Castle Shield shall prepare a Security Agreement, Guaranty and any other document required under the CSH Plan Terms, which shall be subject to approval by the Debtor, Hubbard Capital, LLC, and BSIG, LLC.  To the extent any issues cannot be resolved between the parties with the documents referenced in this paragraph, Castle Shield, the Debtor, BSIG, LLC or Hubbard Capital, LLC may apply to the Court on notice to the other parties, which will resolve said objection to the form of documents.

27.    Notwithstanding any reference to an asset purchase agreement in the CSH Plan Terms, this Order and the documents incorporated herein shall act as the sole sale document reflecting the sale to Castle Shield.

28.    The Debtor shall reasonably cooperate with Castle Shield to consummate and make

(Page 14)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

effective the transfer of the Assets to Castle Shield (at Castle Shield's sole cost and expense). Without limiting the generality of any of the foregoing provisions of this Order, Debtor agrees to act in good faith to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary to consummate and make effective the Transfer of the Assets (at Castle Shield's sole cost and expense).

29.     Debtor agrees (a) to furnish upon request to each other such further information, (b) to execute and deliver to each other such other documents, and (c) to do such other acts and things, all as Castle Shield may reasonably request for the purpose of carrying out the intent of this Order and the documents referred to herein and the Plan.

30.     Castle Shield is authorized, as the agent and attorney-in-fact of Debtor, to execute, acknowledge, deliver or perform, any and all further instruments and acts which may be reasonably required to transfer and assign to Castle Shield the Assets transferred or intended to be transferred pursuant to this Order and the Plan.

31.     The Debtor is authorized to assume and assign to Castle Shield the Software License and Support Agreement and the Amendment to Software License and Support Agreement (collectively, the "License Agreement") entered into with CyberShark, Inc. ("CSI")  pursuant to sections 363 and 365 of the Bankruptcy Code, effective upon entry of this Order.  Castle Shield agrees that: (i) CSI will receive an additional $25,000 in royalties from the License Agreement attributable to Log Storm/Castle Shield to be adjusted/paid on the one (1) year anniversary of Castle Shield assuming the License Agreement (if sufficient funds are not available pay the

(Page 15)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

$25,000 from Castle Shield's share of the License Agreement royalties on the one-year anniversary, then the balance of the $25,000 shall be paid as soon thereafter as royalty funds attributable to Castle Shield  from the License Agreement become available); and (ii) in consideration of Castle Shield's receipt of royalties pursuant to the License Agreement, Castle Shield shall provide support and maintenance to CSI pursuant to the BlackStratus Maintenance and Support Agreement dated January 9, 2020.

32.     The Plan satisfies section 1125 of the Bankruptcy Code without the need for re-solicitation.

33.     The treatment of Claims and interests as provided in the Plan is approved.

34.     To the extent that any objection to confirmation of the Plan has not been withdrawn prior to entry of this Confirmation Order, all such objections, including the Objections, are hereby overruled.

35.     Objections to confirmation of the Plan, including those that were raised informally, that have been withdrawn shall be, and they hereby are, deemed withdrawn with prejudice.

36.     Immediately upon the entry of the Confirmation Order, the Plan and this Confirmation Order shall be binding upon and inure to the benefit of the Debtor, any heirs, executors, administrators, successors and assigns thereof, and all holders of Claims or interests, and their respective successors and assigns, whether or not they voted to accept the Plan.

37.     Caisson Breakwater Global Opportunity Fund, LC ("Caisson") filed a proof of claim designated as no. 20 in the Debtor's Claims Register (the "Caisson Claim"). A portion of

(Page 16)

| | |
|---|---|
| Debtor: | Log Storm Security, Inc. d/b/a BlackStratus |
| Case Number: | 20-12043 (MBK) |
| Caption of Order: | Order Confirming First Amended Chapter 11 Plan of Reorganization of Log Storm Security, Inc. d/b/a BlackStratus |

the Caisson Claim is hereby subordinated to the claims of all other general unsecured creditors so that Caisson will not receive any distributions on account of the following contract only, until such time that all allowed claims of general unsecured creditors are paid in full: Convertible Promissory Note between Caisson and Debtor, dated June 3, 2016 in the amount of $2,918,081.29. The remaining amount of the Caisson Claim relating to a Secured Merchant Agreement dated December 21, 2018 in the amount of $766,168.00 will not be subordinated and will be paid as a Class 6 General Unsecured Creditor under the Plan. The Caisson Claim is hereby allowed, subject to the terms of this paragraph.

38.     To the extent the Confirmation Order conflicts with the Disclosure Statement, the Plan, or any other agreement entered into between the Debtor and any party or other orders of the Bankruptcy Court, this Confirmation Order shall control.

39.     Failure specifically to include or reference particular sections or provisions of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Bankruptcy Court that the Plan be confirmed and such provisions and related agreements be approved in their entirety.

40.     This Order shall not be subject to a stay pursuant to Bankruptcy Rule 3020(e).

41.     The Court shall retain exclusive jurisdiction over this reorganization case, including exclusive jurisdiction over all controversies, disputes, and suits which may arise in connection with the interpretation or enforcement of the Plan and this Confirmation Order or in connection with the enforcement of remedies under the Plan and this Confirmation Order.

## Exhibit A

**Plan**

**McMANIMON, SCOTLAND
& BAUMANN, LLC**
75 Livingston Avenue, Second Floor
Roseland, New Jersey 07068
(973) 622-1800
Richard D. Trenk, Esq. (rtrenk@msbnj.com)
Robert S. Roglieri, Esq. (rroglieri@msbnj.com)
*Counsel to Debtor and Debtor-in-Possession,*
*Log Storm Security, Inc. d/b/a BlackStratus*

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| LOG STORM SECURITY, INC., d/b/a BLACKSTRATUS, | Case No. 20-12043 (MBK) |
| Debtor. | |

### FIRST AMENDED PLAN OF REORGANIZATION

The Debtor/Plan Proponent respectfully submits its First Amended Plan of Reorganization

pursuant to chapter 11 of title 11 of the United States Code, in the form annexed hereto and made a

part hereof.

> **McMANIMON, SCOTLAND,
> & BAUMANN, LLC**
> *Counsel for Debtor and Debtor-in-Possession,*
> *Log Storm Security, Inc. d/b/a BlackStratus*
>
> By:____/s/ Richard D. Trenk_____
>         RICHARD D. TRENK
>
> **LOG STORM SECURITY, INC.
> d/b/a BLACKSTRATUS**
>
> By:____*/s/ Dale W. Cline*_____
>         DALE W. CLINE
>         Chief Executive Officer

Dated:  May 19, 2020

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .........................1

     A.      General Overview...................................................................................1
     B.      Definitions .............................................................................................2
     C.      Unclassified Claims...............................................................................9
        1.      Administrative Expenses and Fees ........................................ 9
        2.      Priority Tax Claim ............................................................... 10
        3.      Fee Claims ........................................................................... 10
     D.      Classified Claims.................................................................................11
        1.      Classes of Secured Claims ................................................... 11
        2.      Priority Non-Tax Claims...................................................... 13
        3.      Class of General Unsecured Claims ..................................... 13
        4.      Class of Equity Interests ...................................................... 14
     E.      Acceptance or Rejection of Plan ..........................................................14
     F.      Means of Effectuating the Plan ............................................................14
        1.      The Debtor's Assets and Operations.................................... 14
        a.      Transfer of the Debtor's Assets ........................................... 14
        b.      Strategy for Marketing and Operations................................ 15
        c.      Capital Structure of Purchaser ............................................. 15
        d.      Involvement of Dale Cline in Purchaser Postpetition........... 15
        2.      Funding for the Plan............................................................. 16
        3.      Disbursing Agent ................................................................. 17

III.    TREATMENT OF MISCELLANEOUS ITEMS ..............................................................17

     A.      Executory Contracts and Unexpired Leases..........................................17
     B.      Changes in Rates Subject to Regulatory Commission Approval ...........18
     C.      Retention of Jurisdiction ......................................................................18
     D.      Procedures for Resolving Contested Claims .........................................20
     E.      Notices under the Plan ..........................................................................21

IV.     EFFECT OF CONFIRMATION OF PLAN....................................................................21

     A.      General Injunction ................................................................................21
     B.      Causes of Action ..................................................................................22
     C.      Modification of Plan .............................................................................22
     D.      Post-Confirmation Conversion/Dismissal.............................................22
     E.      Post-Confirmation Quarterly Fees........................................................23

# I.
# INTRODUCTION

Log Storm Security, Inc. d/b/a BlackStratus (the "Debtor") is the debtor-in-possession in the instant bankruptcy case.  On February 6, 2020, the Debtor commenced a bankruptcy case by filing a voluntary chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101, et seq.  This document is the First Amended Chapter 11 Plan (the "Plan") proposed by the Debtor (the "Proponent").  Sent to you in the same envelope as this document is the First Amended Disclosure Statement which has been approved by the United States Bankruptcy Court for the District of New Jersey (the "Court"), and which is provided to help you understand the Plan.

This is a reorganization plan.  In other words, the Proponent seeks to accomplish payments under the Plan by satisfying Administrative Expense Claims, with the exception of Administrative Tax Claims, in full on the Effective Date.  Allowed Unsecured Claims shall be paid a pro rata dividend from the Third Distribution from the Royalty Fund to be established under this Plan. The Effective Date of the proposed Plan is thirty (30) days after the date on which the Confirmation Order becomes final.

# II.
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## A.  General Overview

As required by the Bankruptcy Code, the Plan classifies claims in various classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each class of claims is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

1

## B. Definitions

**Scope of Definitions**.  For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan.  In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

**1.**     **Administrative Expense** shall mean any cost or expense of administration of the chapter 11 case allowable under section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of their business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of the Debtor under chapter 123, title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and confirmation of this Plan.

**2.**     **Allowed** when used as an adjective preceding the words "Claim" or "Claims" shall mean any Claim against the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim against such the Debtor, or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of

2

Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim from and after the Petition Date.

**3.**     **Administrative Expense** shall mean any right to payment constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates, (b) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, (c) any fees or charges assessed against the Estate under Section 1930 of chapter 123 of Title 28 of the United States Code, and (d) all Claims arising under Section 503(b)(9) of the Bankruptcy Code. .

**4.**     **Allowed** shall mean, with reference to any Claim, proof of which was timely and properly filed or, if no proof of Claim was filed, which has been or hereafter is listed by the Debtors in the Schedules, as liquidated in amount and not disputed or contingent and, in each case, as to which: (A) no objection to allowance has been interposed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (B) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.

**5.**     **Avoidance Actions** shall mean any and all rights to recover or avoid transfers or liens under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the

3

Bankruptcy Code, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions; subject, however, to any releases thereof provided in the Plan, the Confirmation Order, or any other Final Order of the Bankruptcy Court.

6.     **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code.

7.     **Bankruptcy Court** shall mean the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the chapter 11 case and, to the extent of any reference made pursuant to 28 U.S.C. § 158, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

8.     **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. § 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

9.     **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in New Jersey are authorized by law to close.

10.     **Cash** shall mean legal tender of the United States of America and equivalents thereof.

11.     **Causes of Action** shall mean the Avoidance Actions and all other claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements,

4

promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or the Estate against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, and any and all commercial tort claims against any party, including the Debtor's current and former directors and officers.

12. **Chapter 11 Case** shall mean the case under Chapter 11 of the Bankruptcy Code in which Log Storm Security, Inc. d/b/a BlackStratus is the Debtor.

13. **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in Section 101(5) of the Bankruptcy Code.

14. **Class** shall mean a grouping of substantially similar Claims for common treatment thereof pursuant to the terms of this Plan.

15. **Code** shall mean title 11 of the United States Code, otherwise known as the Bankruptcy Code.

16. **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

17. **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

4823-8375-4172, v. 1

18. **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

19. **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

20. **Debt** means, refers to and shall have the same meaning ascribed to it in section 101(12) of the Code.

21. **Debtor** shall mean Log Storm Security, Inc. d/b/a BlackStratus.

22. **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to section 1125, et seq. of the Bankruptcy Code.

23. **Effective Date** shall mean thirty (30) days after the day on which the Confirmation Order becomes a Final Order.

24. **Equity Interests** means all equity interests in the Debtor including, but not limited to, all issued, unissued, authorized or outstanding shares or membership interests together with any warrants, options or contract rights to purchase or acquire such interests at any time.

25. **Estate** means the estate of the Debtor created upon the commencement of the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

26. **Executory Contract** means any executory contract or unexpired lease as of the Commencement Date between the Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Plan.

27. **Fee Claim** means a Claim under Sections 328, 330(a), 331, 363 or 503 of the Bankruptcy Code for Accrued Professional Compensation.

28. **Final Order** shall mean an order of the Bankruptcy Court of a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

29. **General Unsecured Claim** shall mean any Claim against the Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not: (i) an Administrative Expense Claim, (ii) a Priority Tax Claim, (iii) a Non-Tax Priority Claim, (iv) a Secured Claim, or (v) an Equity Interest.

30. **Holder** means the beneficial holder of any Claim or Equity Interest.

31. **Impaired** when used as an adjective preceding the words "Class of Claims" shall mean that the Plan alters the legal, equitable, or contractual rights of the member(s) of that class.

32. **Lien** means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in Section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

33. **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

34.    **Petition Date** shall mean February 6, 2020, the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

35.    **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

36.    **Priority Non-Tax Claim** shall mean a Claim entitled to priority under sections 507(a)(2), (3), (4), (5), (6), or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

37.    **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

38.    **Priority Tax Claim** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

39.    **Proceedings** shall mean the Debtor's Chapter 11 Case.

40.    **Proponent** means the Debtor.

41.    **Secured Claim** means a Claim (i) that is secured by a Lien on property in which the Estate has an interest, which lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtor; (ii) to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtor or (B) if disputed by the Debtor, such dispute is settled by written agreement between the Debtor and the holder of such Claim or determined, resolved, or adjudicated by Final Order.

8

42. **Other Definitions**, a term used and not defined herein but that is defined in the Bankruptcy Code, shall have the meaning set forth therein. The words "herein", "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover, some terms defined herein are defined in the section in which they are used.

## C. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class. The treatment of these claims is provided below.

### 1. Administrative Expenses and Fees

Administrative Expenses are claims for costs or expenses of administering the Debtor's Chapter 11 Case which are allowed under Bankruptcy Code section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case. The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to different treatment.

Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim will receive Cash on the later of (a) the Effective Date and (b) the first Business Day after the date that is 30 calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

9

### 2. Priority Tax Claim

Priority Tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). To the extent that such Claim has not been previously satisfied, each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim: (a) payment in Cash equal to the unpaid portion of such Allowed Priority Tax Claim within seven (7) Business Days after such Allowed Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable; or (b) Cash in an amount agreed to by the Debtors and such Holder; provided, however, that any Claim or demand for payment of a penalty (other than a penalty of the type specified in Section 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to this Plan and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor or the Estate.

The following chart provides an estimate of Priority Tax Claims:[1]

| NAME | AMOUNT ESTIMATED | TYPE OF CLAIM |
|---|---|---|
| Internal Revenue Service | $12,588.32 | Priority Tax Claim |

### 3. Fee Claims

All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 30 days after the Effective Date and (ii) shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (a) on the date upon which the Order relating to any such Allowed Fee Claim is entered, or (b) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the

10

Debtor. The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

### D. Classified Claims

#### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. These claims are to be treated as follows:

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|-------|-------------|----------------|----------------|-------------|-----------|
| 1 | Hubbard Capital, LLC & State of Connecticut, Department of Economic and Community Investment | N | Y | $4.5 million (Estimated) | The combined claim of Hubbard Capital, LLC and CTDECI shall be allowed and fixed at $4.5 million inclusive of all principal, interest, late charges and fees ("Allowed Class 1 Claim"). The Allowed Class 1 Class Claim shall receive the following in full satisfaction: a First Distribution from the Royalty Fund (as defined below) subject to the following carveout (the "Carveout"): $100,000 of the first $4 million plus 50% over $4.0 million up to $4.5 million shall be paid to satisfy administrative claims and to Class 6 Allowed Claims on a pro rata basis. Class 1 shall only be paid the Allowed Class 1 Claim, including the |

---

[1] All disputed and subject to further review.

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|-------|-------------|----------------|-----------------|-------------|-----------|
| | | | | | Carveout. Additionally, as consideration for the Carve Out herein, Hubbard Capital, LLC shall receive 5% non-voting stock of CSI subject to dilution. |
| 2 | BSIG, LLC[2] | N | Y | $1.25 million (Estimated) | The Debtor shall satisfy the Claim as follows: Second Distribution from the Royalty Fund. |
| 3 | M2 Lease Funds, LLC | N | Y | $11,385.00 | The Debtor shall satisfy the Claim as follows: Treated as a Class 6 Claim |
| 4 | MB Financial Bank, N.A. | N | Y | Unknown | The Debtor shall satisfy the Claim as follows: Treated as a Class 6 Claim |
| 5 | Pulova Services, Inc. | Y | Y | $85,000 | The Debtor shall satisfy the Claim as follows: Treated as a Class 6 Claim |

[2] The Debtor reserves the right to dispute the claims of BSIG LLC, including, but not limited to, the extent and validity of their secured claims.

4823-8375-4172, v. 1

### 2. Priority Non-Tax Claims

Certain priority non-tax Claims that are referred to in Bankruptcy Code sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment. These Claims are to be treated as follows: the holder of each such Allowed Claim shall receive Cash on the Effective Date equal to the allowed amount of such Allowed Claim, unless such holders vote to accept deferred cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Caims.

The following chart identifies the Debtor's alleged priority unsecured claims:[3]

| Creditor | Amount of Alleged Claim | Basis for Alleged Claim |
|---|---|---|
| Kelly Young | $13,650.00 | Priority Wage Claim |
| Dilip Kumar | $13,650.00 | Priority Wage Claim |
| Joseph Lusardi | $13,650.00 | Priority Wage Claim |
| Don Carfagno | $13,650.00 | Priority Wage Claim |
| Denae Dalia | $13,650.00 | Priority Wage Claim |
| Susie Fang | $13,650.00 | Priority Wage Claim |
| Andy Gleason | $13,650.00 | Priority Wage Claim |
| Dave Ivey | $13,650.00 | Priority Wage Claim |
| Rich Murphy | $13,650.00 | Priority Wage Claim |
| Chuck Storms | $13,650.00 | Priority Wage Claim |
| **TOTAL:** | **$136,500.00** | |

### 3. Class of General Unsecured Claims

General Unsecured Claims are unsecured claims not entitled to priority under Bankruptcy Code section 507(a). These claims are to be treated as follows:

---

[3] The Debtor reserves the right to dispute these claims.

4823-8375-4172, v. 1

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | General unsecured claims<br>• Total amount of claims = (this amount is still being determined in light of the fact that certain claims are subject to objection and reclassification, but are anticipated at approximately $4,000,000).<br><br>Estimated Distribution: 20-25% | N | Y | Allowed Class 6 Claims shall be paid a *pro rata* portion of the Third Distribution from the Royalty Fund and the Carveout after payment of any unpaid administrative expenses and priority claims. |

### 4. Class of Equity Interests

All equity interests will be extinguished by the Holder thereof on the Effective Date.

## E. Acceptance or Rejection of Plan

Each impaired class of Creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan. In the event that any impaired class of Creditors shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## F. Means of Effectuating the Plan

### 1. The Debtor's Assets and Operations

#### a. Transfer of the Debtor's Assets

On the Effective Date, the Debtor shall transfer all assets, revenue and contracts to CSI, which will own all of the Debtor's assets, revenue, and contracts free and clear of all liens, claims and encumbrances, subject to the terms of this Plan.

4823-8375-4172, v. 1

### b.  Strategy for Marketing and Operations

CSI will target both managed service providers and mid-large size enterprises.  For managed service providers this enables their firms to expand into the security as a service model for clients with little to no risk to their client base (small to medium businesses) while with mid-large enterprise enables the firm to mitigate their security risk on a 24/7 basis by leveraging a third-party.  CyberShark will be sold through both distribution (TechData) and direct.

MARS Advisors, the parent company of CSI, has other firms within their portfolio, namely DiligenceIT, which services private equity firms, corporations, and educational institutions.  There are multiple distribution agreements currently in negotiation (Intellisys, IngramMicro, etc.) with clients that MARS Advisors and DiligenceIT have an existing relationship with.  DiligenceIT was involved in the initial sale of CyberShark (product) to the largest CyberShark client of BlackStratus for a $1.1M, 3-year deal.  There are other deals of this size that are in the pipeline for DiligenceIT and therefore can be sent to CyberShark as opposed to a competitor.  DiligenceIT sells various security-related products and can leverage its existing sales force to focus on new sales while expanding the CyberShark footprint in existing accounts.

Based on these marketing and operational strategies, CSI believes that it will be able to provide $6.5M in plan payments.  A copy of CSI's projections with respect to the Plan are annexed to the Disclosure Statement as **Exhibit D.**

### c.  Capital Structure of Purchaser

MARS Advisors is actively raising equity to meet the revenue expectations anticipated herein.

### d.  Involvement of Dale Cline in Purchaser Postpetition

Due to the specialty knowledge and historical context around CyberShark and the underlying software that is licensed to CSI, it is expected that Dale Cline will be engaged as a

15

Managed Service Provider ("MSP") for CSI.  MSPs are not directly employed by any company and function as independent contractors.  MSPs, in this instance, will receive a margin on the value of a contract entered into between CSI and a licensee.  MSPs typically earn 20-30% of a contract's revenue.

Mr. Cline will not be directly employed by CSI.

## 2. Funding for the Plan

The funds necessary for funding the Plan will be derived from funds on hand on the Effective Date and from future royalties which shall be be derived from CSI's gross revenues as follows: (i) 3.5% of gross revenues for 2020; (ii) 7% of gross revenues for years 2021 through 2026.  CSI projects that the royalty stream will approximate $6.5 million.  See **Exhibit D**.  The total royalty stream shall not exceed $6.5 million over the life of the Plan.

These funds shall be deposited with the Disbursing Agent (the "Royalty Fund") within forty-five days following the end of the calendar year.  The Disbursing Agent shall distribute funds from the Royalty Fund in conformance with the priority scheme in section 507 followed by distributions to Class 1 ("First Distribution") in conformance with this Plan.  Upon satisfaction of the obligations under the Plan to Class 1, the Disbursing Agent shall make distributions from the Royalty Fund to Class 2 ("Second Distribution") in conformance with the Plan.  Finally, upon satisfaction of the obligations under the Plan to Class 2, the Disbursing Agent shall make a distribution from the Royalty Fund to Class 6 ("Third Distribution") in conformance with the Plan.

Distributions made under the Plan shall be made no later than forty-five (45) days following a deposit of funds into the Royalty Fund.

4823-8375-4172, v. 1

### 3. Disbursing Agent

The Disbursing Agent shall be designated by the Court and act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive 2% of all distributions for distribution services rendered and expenses incurred pursuant to the Plan.

### III.
### TREATMENT OF MISCELLANEOUS ITEMS

### A. Executory Contracts and Unexpired Leases

On the Effective Date, the following contracts shall be deemed assumed and assigned to CSI, or any other successful purchaser, unless such successful purchaser provides notice to the Debtor that it wishes to reject any contracts prior to the Effective Date:

| Account Name | Deal Name |
|---|---|
| CACI (L3 Communications) | CACI - LS xp1 M&S Renewal 2020 |
| National Guard - San Louis Obispo CA | National Guard - San Louis Obispo CA - M&S Renewal 2020 |
| Lutherwood | Lutherwood - xp1 M&S Renewal 2020 |
| PA GAME COMM. | PA Game Commission Cinxi M&S Renewal 2020 |
| Westmoreland County Courthouse | Westmoreland County Courthouse - LogStorm M&S Renewal 2020 |
| NJHA | NJHA- 2TB VLS M&S Renewal 2020 |
| Data Dimensions | Data Dimensions - LS Ranger M&S Renewal 2020 |
| Rivers Casino | Rivers Casino-Cinxi M&S Renewal 2020 |
| Commercial Bank of PA | Commercial Bank of PA - Cinxi M&S Renewal 2020 |
| Central Cooperative Bank | Central Cooperative Bank VLS Ann Sub 2020 |
| Tobyhanna Army Depot | Tobyhanna - M&S Renewal 2020 |
| Children International | Children International - Cinxi M&S Renewal 2020 |
| Slovakia Ministry of Justice | Slovakia MoJ - SIEM Storm M&S 2020 |
| Orange Business Services | Orange Business - SIEM Storm Storage Annual Subscription 2020 |
| UltiSat | UltiSat - Cinxi Rangers M&S Renewal 2020 |
| Aquarion Water Company | Aquarion Water Company -2TB Virtual LS M&S 2020 |
| 1st Summit Bank | 1st Summit Bank - CINXI One M&S Renewal 2021 |

17

| Account Name | Deal Name |
|---|---|
| Environmental Protection Agency (EPA OIG) | EPA OIG Cinxi Exp M&S Renewal 2021 |

The Confirmation Order shall constitute an order approving such assumption and assignment as of the Effective Date. All other Executory Contracts and unexpired leases not assumed before the Effective Date will be deemed rejected. The Confirmation Order shall constitute an order approving such rejection as of the Effective Date.

All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

**B. Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission of approval of its rates.

**C. Retention of Jurisdiction**

The Court shall retain jurisdiction of this case pursuant to the provisions of chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, to make such orders as are necessary or appropriate to carry out the provisions of this Plan, and with respect to the following matters:

(a)     To enable the Plan Proponent to consummate the Plan and to resolve any disputes arising therefrom;

(b)     To adjudicate all controversies concerning the classification, estimation or allowance of any Claim herein;

(c)     To make such Orders as are necessary or appropriate to implement the provisions of this Plan;

18

(d)     To determine the classification, estimation and priority of all claims against the Debtor and to re-examine any Claims which may have been allowed;

(e)     To determine applications for the rejection or assumption of executory contracts or unexpired leases pursuant to the provisions of this Plan which are not determined prior to the Confirmation date and to determine allowance of Claims for damages with respect to rejection of any such executory contracts or unexpired leases within such time as the Court may direct;

(f)     To oversee and issue further appropriate orders respecting disbursement of amounts deposited as may be required by this Plan;

(g)     To conduct hearings on valuation, as necessary, and to determine whether any party in interest is entitled to recover against any Person any Claim, whether arising under section 506(c) of the Bankruptcy Code, or arising out of a voidable preference, a fraudulent transfer, or otherwise;

(h)     To hear and determine all applications for compensation and other Administrative Expenses;

(i)     To hear and determine any and all pending adversary proceedings or contested matters;

(j)     To determine all causes of action which may exist in favor of the Debtor;

(k)     To determine any modification of the Plan after confirmation pursuant to section 1127 of the Bankruptcy Code;

(l)     To enter any order, including injunctions, necessary to establish and enforce the rights and powers of the Debtor under the Plan;

(m)    To enter a final decree pursuant to Rule 3022 of the Bankruptcy Rules.

(n)     To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

(o)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of Bankruptcy Court in the Chapter 11 Case entered on or before the Confirmation Date;

(p)     To hear and determine any and all controversies and disputes arising under, or in connection with, the Plan;

(q)     To hear and determine any and all objections to payments under the Plan;

(r)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(s)     To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(t)     To adjudicate all causes of action to recover all assets and properties of the Debtor wherever located;

(u)     To enter any order, including injunctions necessary to enforce the title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions on such title rights and powers as the Bankruptcy Court may deem necessary or appropriate; and

(v)     To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, or enforcing the provisions thereof.

In addition, this Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code.  If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor elects to bring an action or proceeding in any other forum, then this section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

### D. Procedures for Resolving Contested Claims

Objections to Claims, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the Debtor or any party in interest up to and including ninety (90) days following entry of the Confirmation Order.  With respect to disputed Claims, the Disbursing

Agent will hold in a separate interest-bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim, as listed either in the Debtor's schedules or the filed proof(s) of claim.

### E.  Notices under the Plan

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponent, addressed to Richard D. Trenk, Esq. and Robert S. Roglieri, Esq., McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue, Roseland, New Jersey 07068.

## IV.
## EFFECT OF CONFIRMATION OF PLAN

### A.  General Injunction

Except as otherwise provided in the Plan, the Confirmation Order will provide that all persons and entities who have held, hold, or may hold Claims against the Debtor are permanently enjoined, on and after the Confirmation Date, from (A) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or taking any act to recover such Claim outside of the claims allowance procedure discussed in the Plan and the Bankruptcy Code and Bankruptcy Rules, (B) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or Order against the Debtor on account of any such Claim, (C) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim and (D) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim.

21

### B.  Causes of Action

The Reorganized Debtor, on behalf of and for the benefit of the Debtor's estates, shall be vested with and shall retain and may enforce any and all claims, rights, demands and Causes of Action of any kind or nature whatsoever held by, through or on behalf of the Debtor and/or its Estate against any other entity, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date whether or not such claims or Causes of Action are specifically identified in the Disclosure Statement accompanying this Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.

### C.  Modification of Plan

The Proponent of the Plan may modify the Plan at any time before Confirmation. However, the Court may require a new disclosure statement or revoting on the Plan if Proponent modifies the Plan before Confirmation.

The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

### D.  Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan.  If the Court orders the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from the stay was not previously granted by the Court during this case.

**E.  Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of

the United States Trustee post-confirmation until such time as the case is converted, dismissed,

or closed pursuant to a final decree.

**McMANIMON, SCOTLAND,**
 **& BAUMANN, LLC**
*Counsel for Debtor and Debtor-in-Possession,*
*Log Storm Security, Inc. d/b/a BlackStratus*


By:____/s/ Richard D. Trenk_____
     RICHARD D. TRENK

**LOG STORM SECURITY, INC.**
**d/b/a BLACKSTRATUS**


By:____/s/ Dale W. Cline_____
     DALE W. CLINE
     Chief Executive Officer

Dated:  May 19, 2020

4823-8375-4172, v. 1

## Exhibit B

**Castle Shield Initial Offer**

# IN RE: LOG STORM SECURITY, INC.

## Chapter 11
## Case No. 20-12043 (MBK)

## CASTLE SHIELD HOLDINGS, LLC OFFER

Pursuant to the Court Order, entered into on May 21, 2020, Castle Shield Holdings, LLC ("**Castle Shield**") hereby submits the below offer (the "**Offer**") for certain assets of Log Storm Security, Inc. ("**Debtor**").

### 1. Debtor's Assets

Upon the effective date of the Debtor's proposed Amended Plan of Reorganization, Debtor shall transfer all intellectual property (including, without limitation, all content from (i) US based development servers (last housed in Piscataway, New Jersey) and Indian development servers), revenue, Claims (defined below) and contracts (including designation rights for assumption and assignment and/or rejection of all executory contracts) (the "**Assets**") to Castle Shield Holdings, LLC ("**Castle Shield**"), which will own all of the Assets free and clear of all liens, claims, encumbrances, and other interests.   The Assets will be transferred pursuant to an asset purchase agreement which shall contain standard representations and warranties.

"**Claims**" shall include any and all claims held by Debtor against any Director, Principal or Officer of Debtor whether identified in the Debtor's Amended Disclosure Statement or otherwise, and any and all causes of action against any party held by Debtor which arises under Chapter 5 of Title 11 of the United States Code (the "**Bankruptcy Code**") as well as any potential claims or causes of action relating to fraudulent transfers, under state law or other applicable law.   To the extent Debtor's Directors, Principals and Officers cooperate in good faith with Castle Shield to effectuate the transfer of the Assets and to reconcile any all claims against the Debtor, and cooperate in terms of objecting to such claims where necessary, Castle Shield will release any such Claims, solely as to such cooperating Principals, Directors and Officers.

### 2. Subordination of Claim

Caisson Breakwater Global Opportunity Fund, LC ("**Caisson**") is a creditor of the Debtor and filed a proof of claim designated as no. 20 in the Debtor's Claims Register (the "**Claim**"). Solely, in connection with this Offer, Caisson has authorized Castle Shield to subordinate a portion of the Claim to claims of all general unsecured creditors so that Caisson shall not receive any distributions on account of the  following contract, until such time that all allowed claims of general unsecured creditors are paid in full:

| Contract | Amount |
|---|---|
| Convertible Promissory Note between Caisson and Debtor, dated June 3, 2016 | $2,918,081.29 |

The remaining amount of the Claim relating to a Secured Merchant Agreement dated December 21, 2018 in the amount of $766,168.00 will not be subordinated.

Under Debtor's Amended Plan as proposed, CYBERshark will distribute monies to creditors, up to a maximum amount of $6.5 million.   Under Castle Shield's proposal, if CYBERshark were able to distribute this entire amount, distribution to unsecured creditors would be diluted by $2,918,081.29.

In contrast, if Castle Shield were to distribute $6.5 million to creditors, as a result of Caisson's subordination of a portion of the Claim, unsecured creditors would receive substantially enhanced dividends based upon the reduction of the claim pool by $2,918,081.29.  That being said, Castle Shield's proposal is not limited to $6.5 million and will likely result in payment of 100% of all unsecured claims.

### 3.  Funding of Offer

Castle Shield proposes to fund its offer through an initial deposit of $100,000.00, followed by payment of 10% of its annual revenue through 2023, with a cap of $8,500,000, or until all allowed claims of general unsecured creditors are paid in full, whichever is less.

Within thirty (30) calendar days of the effective date of the Debtor's plan of reorganization, Castle Shield shall deposit with the Disbursing Agent an amount equal to One Hundred Thousand Dollars ($100,000).   The balance of the funds necessary for funding of Castle Shield's Offer will be derived from future royalties.   Castle Shield's projected gross revenues (attached hereto as Schedule "A") are anticipated to be as follows:

| Calendar Year | Projected Revenues |
|---|---|
| 2020 | $2,053,903 |
| 2021 | $14,083,598 |
| 2022 | $40,173,816 |
| 2023 | $82,060,341 |

 Based on projected gross revenues and the claims estimated in Debtor's Amended Disclosure statement, Castle Shield's anticipates allowed claims of creditors being paid in full under this proposal.   As discussed above, under the Debtor's Plan, CYBERshark has only agreed make distributions to Creditors in an amount not to exceed $6.5 million.

Castle Shield anticipates that the below funds shall be deposited with the Disbursing Agent (the "**Royalty Fund**") and distributed within forty-five (45) days following the end of the calendar year.  The Disbursing Agent shall distribute funds from the Royalty Fund in conformance with

the Debtor's plan, except that once Class 6 is paid in full, Castle Shield shall remit any remaining obligation to Caisson directly.  Again, as noted above, no distributions will be made with respect to the subordinated portion of Caisson's claim until all allowed claims of general unsecured creditors have been paid in full.

| Calendar Year | Anticipated Royalty Fund (Up to 10% of Revenues) |
|---|---|
| 2020 | $205,390 |
| 2021 | $1,408,359 |
| 2022 | $4,017,381 |
| 2023 | Up to $8,206,034 |

To the extent that $8,500,000 in royalty funds or the allowed claims of Creditors, whichever is less ,has not been paid in full by 2023, then Castle Shield shall continue to fund the Royalty Fund with up to 10% of its Revenues through the earlier of (i) December 31, 2027 or (ii) until such time that either $8,500,000 in royalties are paid or all allowed claims of general unsecured creditors have been paid in full, whichever is less.

### 4. Castle Shield's Marketing and Operations

Castle Shield will target both managed service providers and medium to large size enterprises. Castle Shield will combine the Assets of Debtor with Castle Shield's current assets to offer multiple services and to generate three separate streams of revenue.

SiemStorm – Castle Shield will offer SiemStorm as a standalone network/security dashboard reporting service.  By incorporating Debtor's Assets, Castle Shield will be able to offer customers a dashboard reporting service for both networking and security (as opposed to CYBERshark which will only be offering a security reporting service).

Encryption Services – Castle Shield will offer quantum resistant encryption services for customer's e-mails, attachments and other customer data, as well as a solution that prevents shared files from only being accessed by approved users with an embedded encryption key.  In addition, Castle Shield will offer an encryption app on IOS and Android phones that offers quantum resistant encrypted text, video, and push to talk for both enterprises and consumers.

Risk Assessment Services – Castle Shield will offer customer's risk assessment services to reduce the risk of a security breach and thus protect the customer from negative PR and government fines.

### 5. Executory Contracts and Unexpired Leases

Within thirty (30) days of the Debtor's acceptance of the Offer or confirmation of the Debtor's Amended Plan of Reorganization, whichever comes later, Castle Shield shall provide notice to Debtor with regard to which executory contracts shall be assumed and which contracts shall be

rejected.    After such thirty (30) day period, to the extent that Castle Shield does not provide notice of rejection for any executory contract and unexpired leases, then such contracts or leases shall be deemed assumed and assigned to Castle Shield.

Upon the acceptance of Castle Shield's offer, the following executory contracts will be rejected:

- Assignment and Assumption Agreement between Debtor, Castle Shield Holdings, LLC and Kudelski Security, Inc., dated October 9, 2019

- Software License and Support Agreement between Debtor and Castle Shield Holdings, LLC, dated September 23, 2019

### 6. Claims Reconciliation Process

Castle Shield will have standing under the terms of the Debtor's Amended Plan of Reorganization to object to claims filed in the bankruptcy case, for a period ninety (90) days following the effective date of the Debtor's Plan.  Debtor's principals shall in good faith work with Castle Shield to reconcile and object to claims, as appropriate.

### 7. Bankruptcy Court Approval

The Offer is contingent upon the entry of an Order by the United States Bankruptcy Court (the "**Order**") that, among other things, (i) approves, pursuant to Sections 105, 363, 365, 1123 and/or 1141 of the Bankruptcy Code, (A) the Debtor's acceptance of the Offer of Castle Shield, (B) the sale of the Assets to Castle Shield on the terms set forth herein, with such sale free and clear of all claims, interests and liens, and (C) the performance by the Debtor of its obligations under this Offer; (ii) authorizes and empowers the Debtor to assume and assign to Castle Shield the assigned executory contracts under the terms of this Offer and the rejection of the executory contracts to be rejected, and (iii) finds that Castle Shield is a "good faith" purchaser and not a successor to the Debtor.

## SCHEDULE A

## PROJECTED REVENUES

**See Attached**

**CASTLE SHIELD HOLDINGS, LLC**

| Profit and Loss Statements | Annual | | | | |
| --- | --- | --- | --- | --- | --- |
| | 2019 | 2020 | 2021 | 2022 | 2023 |
| **Revenue** | | | | | |
| Compliance | $0 | $160,000 | $1,748,000 | $5,170,000 | $10,359,600 |
| SIEM | $0 | $198,750 | $4,610,603 | $11,373,485 | $19,371,705 |
| Encryption | $0 | $1,677,153 | $7,724,995 | $23,630,332 | $52,329,036 |
| **Total Revenue** | $0 | $2,035,903 | $14,083,598 | $40,173,816 | $82,060,341 |
| **Cost of Sales** | $0 | $662,333 | $2,558,210 | $6,952,898 | $13,974,406 |
| **Gross Profit** | $0 | $1,373,570 | $11,525,388 | $33,220,918 | $68,085,935 |
| **Expenses** | | | | | |
| Digital Marketing, Cloud and Computer Expense | $359 | $249,464 | $690,096 | $1,968,517 | $4,020,957 |
| Payroll and Contract Labor | $0 | $1,523,009 | $4,306,201 | $10,676,593 | $18,525,943 |
| Equipment and Furniture | $0 | $32,400 | $91,595 | $227,064 | $393,955 |
| Marketing and Advertising | $0 | $36,938 | $704,180 | $2,008,691 | $4,103,017 |
| Insurance | $0 | $55,042 | $155,626 | $385,852 | $669,528 |
| Total Professional Fees and Consultants | $74,349 | $428,948 | $643,421 | $965,132 | $1,447,698 |
| Rents and Office Expense | $0 | $115,000 | $412,200 | $508,200 | $588,700 |
| Telecom | $0 | $7,600 | $42,720 | $58,080 | $70,960 |
| Travel & Entertainment | $0 | $49,000 | $250,000 | $480,000 | $720,000 |
| Miscellaneous Expense | $500,549 | $69,007 | $810,869 | $2,281,846 | $4,334,462 |
| Amortization | $0 | $185,417 | $222,500 | $222,500 | $222,500 |
| Asset Purchase Agreement - Escrow Payments # | $0 | $203,590 | $1,408,360 | $4,017,382 | $5,744,224 |
| Deferred Interest Expense | $12,755 | $28,884 | $0 | $0 | $0 |
| **Total Operating Expenses** | $588,012 | $2,984,298 | $9,737,768 | $23,799,856 | $40,841,943 |
| **Pretax Income** | ($588,012) | ($1,610,729) | $1,787,620 | $9,421,062 | $27,243,992 |
| **Income Tax** | $0 | $0 | $0 | $0 | $0 |
| **Net Income** | ($588,012) | ($1,610,729) | $1,787,620 | $9,421,062 | $27,243,992 |

# Maximum Payout is equal to all approved\Accepted Debtors - Max payout is no greater than 10% of Revenue until the approved amount has been paid.

**<u>Exhibit C</u>**

**Castle Shield Supplemental Offer**

# IN RE: LOG STORM SECURITY, INC.

## Chapter 11
## Case No. 20-12043 (MBK)

## CASTLE SHIELD HOLDINGS, LLC
## SUPPLEMENTAL OFFER

I.    Background

On June 15, 2020, Castle Shield Holdings, LLC ("Castle Shield") submitted an offer for the purchase of certain assets of Debtor (the "CSH Offer").   This offer was structured to compete with CyberShark, Inc.'s ("CSI") offer for such assets.   The offer included an upfront deposit of One Hundred Thousand Dollars, a larger payment cap to creditors than the cap proposed by CSI and subordination of Caisson Breakwater Global Opportunity Fund, LLC's ("Caisson") claim of $2,918,000, to claims of all general unsecured creditors so that Caisson shall not receive any distributions on account of a convertible promissory note between Caisson and the Debtor, until such time that all allowed claims of general unsecured creditors are paid in full.

Immediately after the submission of the CSH Offer, Rock Creek Advisors, LLC ("Rock Creek") asked Castle Shield if it would agree to guaranty any of the payments.   Castle Shield advised Rock Creek that it would not elect to do so at such time on the basis that CSI's offer did not contain any guaranty of payments.   This issue was never broached again.

On June 22, 2020, Rock Creek filed a report with the court indicating that CSI had revised its offer to a payment cap of $8,500,000 and would guaranty payments of $389,000 over 24 months based on projections with the true-up to occur in month 24 from confirmation of the Plan.   CSI did not provide any details of such "guaranty" and how such guaranty would be secured.   It is worth noting that CSI currently appears to be experiencing financial difficulties as evidenced by its failure to make the required initial payments to Debtor pursuant to the terms of their license agreement.

Castle Shield was not made aware of CSI's revised offer prior to the Rock Creek report being filed, nor was it afforded an opportunity to enhance its bid following CSI's revision to its initial bid.   In response to CSI's revised bid, Castle Shield hereby enhances the CSH Offer pursuant to the terms set forth below.

II.    Castle Shield Supplemental Offer

Castle Shield hereby amends the CSH Offer to include the following:

- The CSH Offer shall provide for a guarantee of total payments of One Million Dollars ($1,000,000) to be distributed to Creditors within the initial twenty-four (24) month period (the "Guaranteed Distributions") based on projections with the true-up to occur in month twenty-four (24) from confirmation of the Plan.   The Guaranteed Distributions

will also include distributions from the initial One Hundred Thousand Dollar ($100,000) deposit required to be paid by Castle Shield pursuant to the terms of the CSH Offer.

- The Guaranteed Distribution obligations will be jointly and severally guaranteed by Castle Shield and Caisson Breakwater Global Opportunity Fund, LLC.

All other terms shall remain as set forth in the CSH Offer.

## Exhibit D

**Castle Shield Second Supplemental Offer**

IN RE: LOG STORM SECURITY, INC.
**Chapter 11**

**Case No. 20-12043 (MBK)**

**CASTLE SHIELD HOLDINGS, LLC**

**SECOND SUPPLEMENTAL OFFER**

## I. Background

On June 15, 2020, Castle Shield Holdings, LLC ("Castle Shield") submitted an offer for the purchase of certain assets of Debtor (the "CSH Offer").

Thereafter on June 24, 202 Castle Shield submitted a supplemental offer (the "Supplemental Offer") which incorporated all other terms of the CSH Offer but also provided for a a guarantee of total payments of One Million Dollars ($1,000,000) to be distributed to Creditors within the initial twenty-four (24) month period (the "Guaranteed Distributions") based on projections with the true-up to occur in month twenty-four (24) from confirmation of the Plan. The Guaranteed Distributions will also include distributions from the initial One Hundred Thousand Dollar ($100,000) deposit required to be paid by Castle Shield pursuant to the terms of the CSH Offer.

The Guaranteed Distribution obligations will be jointly and severally guaranteed by Castle Shield and Caisson Breakwater Global Opportunity Fund, LLC.

## II. Castle Shield Second Supplemental Offer

Castle Shield hereby amends the CSH Offer and the Supplemental Offer to include the following: The CSH offer shall grant a security interest in the assets purchased from the Debtor to Class 1 and Class 2 Secured Creditors under the Plan.  Such security interests shall be released by Class 1 and Class 2 Secured Creditors, upon the earlier of payment in full of such secured creditors' secured claims under the Plan, or upon payments in total by CSH in the amount of $6,142,032.48, notwithstanding who such payments are distributed to under the Plan.

## Exhibit D

**Castle Shield Second Supplemental Offer**

## Exhibit E

### Assets

### I.    Intellectual Property

| Owner | Patent Title | Registration Date | Serial No. / Registration No. | Country |
|---|---|---|---|---|
| Log Storm Security, Inc. | Comprehensive Security Structure | January 25, 2011 | 7,877,804 B2 | United States of America |
| Log Storm Security, Inc. | Comprehensive Security Structure Platform for Network Managers | October 24, 2006 | 7,127,743 B1 | United States of America |
| Log Storm Security, Inc. | Security Event Data Normalization | April 6, 2009 | 9,060,024 B2 | United States of America |

### II.    Executory Contracts

| Account Name | Deal Name |
|---|---|
| CACI (L3 Communications) | CACI - LS xp1 M&S Renewal 2020 |
| National Guard - San Louis Obispo CA | National Guard - San Louis Obispo CA - M&S Renewal 2020 |
| Lutherwood | Lutherwood - xp1 M&S Renewal 2020 |
| PA GAME COMM. | PA Game Commission Cinxi M&S Renewal 2020 |
| Westmoreland County Courthouse | Westmoreland County Courthouse - LogStorm M&S Renewal 2020 |
| NJHA | NJHA- 2TB VLS M&S Renewal 2020 |
| Data Dimensions | Data Dimensions - LS Ranger M&S Renewal 2020 |
| Rivers Casino | Rivers Casino-Cinxi M&S Renewal 2020 |
| Commercial Bank of PA | Commercial Bank of PA - Cinxi M&S Renewal 2020 |
| Central Cooperative Bank | Central Cooperative Bank VLS Ann Sub 2020 |
| Tobyhanna Army Depot | Tobyhanna - M&S Renewal 2020 |
| Children International | Children International - Cinxi M&S Renewal 2020 |
| Slovakia Ministry of Justice | Slovakia MoJ - SIEM Storm M&S 2020 |
| Orange Business Services | Orange Business - SIEM Storm Storage Annual Subscription 2020 |
| UltiSat | UltiSat - Cinxi Rangers M&S Renewal 2020 |
| Aquarion Water Company | Aquarion Water Company -2TB Virtual LS M&S 2020 |
| 1st Summit Bank | 1st Summit Bank - CINXI One M&S Renewal 2021 |

| Environmental Protection Agency (EPA OIG) | EPA OIG Cinxi Exp M&S Renewal 2021 |